**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**EDWARD T. BUJANOWSKI,**

    **Plaintiff,**

**v.**                                                                                            **CASE NO. 8:08-CV-390-T-17EAJ**

**LONNIE KOCONTES,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

This cause comes on for consideration of **Plaintiff's Motion for Remand** (Dkt. 9) and Defendant's **Opposition to Motion for Remand** (Dkt. 12). The district judge referred this matter to the undersigned for consideration and the issuance of a report and recommendation (Dkt. 15). See Local Rules 6.01(b) and 6.01(c), M.D. Fla.  Following a June 17, 2008 evidentiary hearing, the undersigned recommends that Plaintiff's Motion for Remand be granted and Plaintiff be awarded attorneys' fees and costs incurred in defending an objectively unreasonable removal. See 28 U.S.C. § 1447(c).

**I.**    **Background**

Plaintiff, Edward Bujanowski, states that in September 2007 he hired Defendant Lonnie Kocontes ("Kocontes") to represent Plaintiff in a condominium dispute. (Compl. ¶ 5) Kocontes, an attorney licensed only in California,  filed suit in Pinellas County Circuit Court on behalf of Plaintiff. (Id. at ¶¶ 1, 8; Dkt. 1 ¶ 3)  Kocontes was admitted pro hac vice, with Debra Rochlin (a Broward County, Florida attorney) named as local counsel. (Compl. ¶¶ 8, 9 and Ex. C; Dkt. 1 ¶ 3) The terms of the agreement between Plaintiff and Kocontes called for a $25,000 flat fee for attorneys' fees, a $25,000 cost deposit, and a 30% contingency fee.  (Compl. ¶ 5 and Ex. A)

Plaintiff claims that Kocontes made certain representations about passing the Florida Bar exam and waiting on his license. (Id. at ¶ 6)

After Kocontes filed the lawsuit on Plaintiffs' behalf, opposing counsel challenged Kocontes' pro hac vice status. Following a December 7, 2007 hearing, Judge Douglas Baird revoked Kocontes' pro hac vice admission.[1] (Compl. Ex. D) Among the reasons cited were Kocontes' Safety Harbor, Florida home (on which he had applied for a homestead exemption), Kocontes' February 2007 marriage license (which listed the Safety Harbor home's address), Kocontes' wife's residence in the Safety Harbor home, Kocontes' failure to hold a driver's licence in his asserted domicile of California even though he holds a non-resident Florida driver's license, and Kocontes' voter registration application in Pinellas County.[2] (Id.)

After the hearing before Judge Baird, Plaintiff's relationship with Kocontes deteriorated. Plaintiff allegedly requested that Kocontes return Plaintiff's deposits because Kocontes could no longer represent Plaintiff. (Compl. ¶ 12) According to Plaintiff, Kocontes threatened Plaintiff with criminal prosecution and forced Plaintiff to pay Kocontes thousands of dollars in cash in exchange for a "release" of all disputes between Plaintiff and Kocontes. (Id. at ¶¶ 18-22) Plaintiff then retained new counsel and sued Kocontes in Pinellas County Circuit Court for Declaratory relief, two counts of Conversion, Unjust Enrichment, Civil Theft, and Exploitation of the Elderly (Dkt. 2).

Kocontes removed the case on February 27, 2008, citing his California residency and the

---

[1] Kocontes' petition for writ of certiorari to Florida's Second District Court of Appeal on Judge Baird's order was dismissed on February 28, 2008. (Pl.'s Ex. 8)

[2] Plaintiff's allegations that Kocontes took steps to reverse the homestead exemption and cancel his voter registration only after Judge Baird's ruling are discussed infra.

value of the case as establishing diversity jurisdiction (Dkt. 1).[3] Plaintiff moved to remand on the basis that diversity jurisdiction is nonexistent because Kocontes is a Florida resident (and was a Florida resident when the suit was filed) (Dkt. 9). Plaintiff also seeks attorneys' fees and costs incurred in moving to remand, arguing that it was objectively unreasonable for Kocontes to remove.

Neither party disputes that the amount in controversy requirement for diversity jurisdiction is met. Kocontes opposes remand, however, on the ground that he is domiciled in California (Dkt. 12). Thus, whether this court has jurisdiction turns on whether Kocontes is domiciled in California or Florida. The undersigned determined that resolving that issue required an evidentiary hearing.

**II.    Removal Framework**

A defendant may remove an action brought in state court if the federal court has original jurisdiction over the action. See 28 U.S.C. § 1441(a). The burden of showing that federal jurisdiction exists rests with the removing party. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1373 (11th Cir. 1998) (citation omitted). Removal statutes should be strictly construed because federal courts are courts of limited jurisdiction. See Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted). A district court's jurisdiction is fixed as of the time of removal, but the court must remand the case if at any time before final judgment it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); see also Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991). Once subject matter jurisdiction has been challenged, any doubts about the existence of federal jurisdiction should be resolved in favor of remand. See, e.g., Russell Corp., 264 F.3d at 1050.

---

[3] Kocontes also moved to dismiss for failure to state a claim, which motion is currently pending (Dkt. 3).

The only potential basis for the court's subject matter jurisdiction in this case is diversity of citizenship, which exists when each defendant is a citizen of a different state from each plaintiff and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332. "Removal requires diversity at the initiation of the action and at the time of removal."  Peraza v. Mazak, No. 8:07-CV-2320-T-23MAP, 2008 WL 186613, *2 (M.D. Fla. Jan. 18, 2008) (internal citations omitted).  "Citizenship is equivalent to 'domicile' for the purposes of diversity jurisdiction." McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002).  "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom. . . .'" Id. at 1257-58.  A change of domicile "requires a concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely." Id. at 1258.  Although a party's residence is not necessarily his domicile, "a party's place of residence is *prima facie* evidence of his domicile." Sprinkle v. Johnson, No. 07-0713-WS-B, 2007 WL 4533046, *3 n.6 (S.D. Ala. Dec. 19, 2007).

In determining domicile, the court considers such objective factors as (1) location of employment, (2) home ownership and ownership of other real property, (3) location of one's household furnishings, (4) registration and title to one's automobiles, (5) driver's licensing, (6) voter registration, (7) payment for utilities, (8) banking, (9) acquiring a telephone number and listing it, (10) receiving mail, (11) and establishing membership in local professional, civic, religious, or social organizations.  See, e.g., McCormick, 293 F.3d at 1258; Slate v. Shell Oil Co., 444 F. Supp. 2d 1210, 1215 (S.D. Ala. 2006); Callahan v. Countrywide Home Loans, No. 3:06-CV-105-RV/MD, 2006 WL 1776747, *3 (N.D. Fla. June 26, 2006); Audi Performance & Racing, LLC v. Kasberger, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003); Simmons v. Skyway of Ocala, 592 F. Supp. 356, 359

4

(S.D. Ga. 1984). See also O'Neal v. Atwal, 425 F. Supp. 2d 944, 947 (W.D. Wis. 2006).

In addition to objective criteria, "the domicile inquiry also considers a party's subjective statements of intent, although such representations are not dispositive." Slate, 444 F. Supp. 2d at 1215; see also Hendry v. Masonite, 455 F.2d 955, 956 (5th Cir. 1972) ("In determining one's citizenship or domicile, statements of intent are entitled to little weight when in conflict with the facts."). The court may also consider affidavits containing personal knowledge of the party's citizenship. See, e.g., Sprinkle, 2007 WL 4533046 at *2 (considering affidavits and statements of the defendant's family members as well as a police officer that the defendant "always considered Alabama his home").

### III. Defendant Fails to Establish a California Domicile

The burden is on Kocontes, the removing party, to show that removal was proper. Any doubt about the existence of federal jurisdiction should be resolved in Plaintiff's favor. Pacheco de Perez, 139 F.3d at 1373 (citations omitted).

Kocontes maintains that he is domiciled in California because he is registered to vote there, pays taxes in California, spends more than half the year in California practicing law, advertises his legal services in California year-round, maintains California banking relationships, holds a non-resident Florida driver's license, keeps personal property at his brother's California home where Kocontes is welcome any time, and rents a room from his California-based colleague (Dkts. 12, 14). Kocontes claims that his Pinellas County house was purchased for his father to live in and that since his father's passing, Kocontes has withdrawn his application for homestead exemption. (Id.) Kocontes has also tried to cancel his Florida voter registration and claims that he was registered to vote in California at the time the lawsuit was commenced (Dkt. 12; Dkt. 14, ¶ 8).

a.  **<u>Findings of Fact</u>**[4]

Kocontes, who is proceeding <u>pro se</u>, is an attorney licensed only in California (Dkt. 14, ¶ 2). In October 2006, Kocontes purchased a home in Safety Harbor, Pinellas County, Florida (<u>Id.</u> at ¶ 3). Kocontes claims that he purchased the Safety Harbor home for his elderly father to live in and that Kocontes planned to spend part of the year in the property and the remainder of the year in California (<u>Id.</u>). The original deed to the home listed the home's Safety Harbor address as Kocontes' address. (<u>Id.</u>) Kocontes moved his father and some of his personal property into the Safety Harbor home. (<u>Id.</u> at ¶ 4). At the hearing, Kocontes testified that he "moved into the home with his father" in December 2006. Kocontes continued to practice law in California and traveled back and forth to Florida.

Kocontes married Katherine Kern in February 2007 in Largo, Florida. The couple's marriage license lists Safety Harbor, Florida as Kocontes' place of residence. (Pl.'s Ex. 2) Kocontes considers the Ms. Kern to be a permanent Florida resident and the Safety Harbor home to be her place of residence. Ms. Kern is listed on the current deed to the property, which was quit-claimed from Kocontes to himself and Ms. Kern as joint tenants with rights of survivorship on December 27, 2007 (Dkt. 14, Ex. 1). Whereas the first deed to the property listed the Safety Harbor address as Kocontes' address, the quit-claim deed lists a California address for Kocontes and the Safety Harbor address for Ms. Kern (<u>Id.</u>).[5]

---

[4] The undersigned's factual findings are either taken directly from the written record or evidence offered at the evidentiary hearing.

[5] Judge Baird's order revoking Kocontes' <u>pro hac vice</u> status was issued on December 7, 2007, approximately three weeks before Kocontes quit-claimed the deed to the property to himself and his wife (Dkt. 9, Ex. 1; Pl.'s Ex. 4).

Kocontes applied for and received a homestead tax exemption on the Safety Harbor home for 2007 (Dkt. 14, ¶ 5) Kocontes claims that he based his application on the fact that his father and his wife, both permanent Florida residents who were totally dependent on Kocontes for financial support, resided in the property (Id.) The application for homestead exemption contains a sworn statement before the signature line that reads: "I am a permanent resident of the State of Florida and I own and occupy the property described above. . . . Further, under penalties of perjury, I declare that I have read the foregoing application and the facts in it are true." (Dkt. 14, Ex. 1) Kocontes claims, and testified at the hearing, that he did not complete the homestead exemption application himself and did not read the application before signing it (Dkt. 14, ¶¶ 6,7). Kocontes admits that he signed the application. Kocontes also registered to vote in Florida on December 27, 2006. (Pl.'s Ex. 3) Kocontes later cancelled his registration.[6]

Kocontes owns real property in Florida but does not own real property in California.[7] Kocontes maintains bank accounts in both California and Florida.[8] (Dkt. 14, ¶ 11; Pl. Ex. 5) Kocontes holds a Florida non-resident driver's license but does not hold a California driver's license (Dkt. 14, Ex. 1). Both of Kocontes' vehicles are registered in Florida; no vehicle is registered in California. Kocontes keeps personal property, furnishings, and belongings in the Safety Harbor

---

[6] The parties disagree as to when Kocontes cancelled his application for voter registration. Kocontes claims that he cancelled it in February 2007; Plaintiff claims that Kocontes cancelled the application only after Judge Baird issued the order revoking Kocontes pro hac vice status. The court finds the timing of Kocontes' cancellation irrelevant because the fact that he affirmatively registered to vote in Florida is indicative of his establishing domicile in Florida.

[7] Kocontes claims that he sold his California property in December 2006 because he could not afford to maintain both residences (Dkt. 14, ¶ 3).

[8] As discussed in more detail, infra, Kocontes failed to disclose the existence of his Florida bank accounts in his opposing papers to the motion to remand.

7

home; Kocontes keeps some furniture and clothes in a room at his brother's home in California. Occasionally Kocontes will rent a room from his business colleague when he is in California. Kocontes has no residential lease or permanent California residence. Kocontes receives mail in Florida; indeed, the correspondence he receives in this case is mailed to a Clearwater, Florida address. Kocontes maintains a home business phone number with a Pinellas County area code. (Def.'s Ex. 13, at 34)  Finally, although he practices law in California and has a California mailing address for his business, Kocontes does not maintain a physical business office in California.

      b.    **Conclusions of Law**

Once domicile is established it does not change merely because the individual intends to establish a different domicile. See Slate, 444 F. Supp. 2d at 1215-16 (citation omitted) ("A party can only have one domicile at a time."). Against the "formidable evidentiary submission" described above, Kocontes' showing that he is domiciled in California is "anemic." See Sprinkle, 2007 WL 4533046, at *4.  Although Kocontes asserts his intent to be a California domiciliary, the objective evidence squarely contradicts his testimony and the undersigned finds him not wholly credible in light of the objective evidence.  Foremost, although domicile and place of residency are distinct concepts, a party's place of residence is prima facie evidence of his domicile. Id. at *3, n.6.  All of the objective evidence points to Florida as Kocontes' state of residence.

Further, the undersigned finds Kocontes not entirely credible because his hearing testimony contradicts the record. Although he offers evidence that he is a very thorough and competent attorney, Kocontes admits that he failed to read the application for homestead exemption and relied on verbal representations about Florida's homestead laws.  Kocontes also submits that he relied on verbal representations from the California Department of Motor Vehicles about driver's licensing

requirements.

More disturbing is that, in opposing Plaintiff's motion to remand, Kocontes failed to disclose evidence of Florida bank accounts and represented only his California banking relationships. At the evidentiary hearing, Kocontes asserted that the Florida bank accounts are personal accounts and that he did not believe his personal bank accounts were relevant to the issue of domicile. However, the location of personal bank accounts is a relevant factor in establishing domicile. See, e.g., Slate, 444 F. Supp. 2d at 1215 (stating that among the numerous indicia considered in determining domicile is "where bank accounts are maintained"). In addition, merely because Kocontes maintains business relationships in California and rents a room when working there does not imply that he intends to remain in California indefinitely. All indications are that Kocontes travels to California for business but always returns to Florida where he owns property and where his wife is a permanent resident.

No single factor is determinative in evaluating whether domicile has been established; rather, "a 'totality of evidence' approach is necessary." Audi Performance & Racing, 273 F. Supp. 2d at 1227. The totality of the relevant evidence before the court demonstrates that Kocontes was, for purposes of diversity jurisdiction, a Florida domiciliary when Plaintiff filed the instant lawsuit and at the time of removal. Kocontes' statements to the contrary regarding his intent are self-serving and insufficient to establish domicile where negated by the objective evidence. Id. at 1215, 1218 (citation omitted) ("a party's self-serving statements of intent are not binding, especially if they are not consistent with his conduct").

Kocontes has failed to meet his burden of showing that he is domiciled in California and that diversity jurisdiction exists. Moreover, even if a sliver of doubt existed that Kocontes is domiciled in Florida (which doubt does not exist), all doubts about the existence of federal jurisdiction should

be resolved in favor of remand. See Pacheco de Perez, 139 F.3d at 1373 (citations omitted). Accordingly, the undersigned recommends that the case be remanded.

**IV.     Attorneys' Fees and Costs**

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Awarding fees on remand is discretionary and turns on the reasonableness of the removal. Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005); see also Bauknight v. Monroe County, Fla., 446 F.3d 1327, 1329 (11th Cir. 2006). Fees are warranted only if "the removing party lacked an objectively reasonable basis for seeking removal." Martin, 546 U.S. at 141. "[D]istrict courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case" as long as the reasons for departing from the general rule are "faithful to the purposes of awarding fees under § 1447(c)." Id. (citations omitted).

Factors for the court to consider in assessing the appropriateness of fees include whether the removal was sought for the purpose of prolonging litigation or imposing costs on the opposing party. Id. at 140. Further, a party's "failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees." Id. at 141. "Although an award of fees requires no finding of bad faith, it goes without saying that if a removal is taken in bad faith, that fact constitutes a circumstance militating strongly in favor of an award of fees against the removing party." Peraza, 2008 WL 186613 at *3 (internal quotation marks and citations omitted). Courts in this district have observed: "[C]ourts that have applied the Martin standard seem to focus upon whether the removing party has offered a credible reason for removal, even if it turns out by subsequent events that the removing party was wrong on the facts or was wrong on the law." See, e.g., Jackson v. Metro. Prop.

10

and Casualty Ins. Co., No. 6:07-CV-779-ORL-19UAM, 2008 WL 58953, *3 (M.D. Fla. Jan. 3, 2008) (citation omitted).

Kocontes lacked an objectively reasonable basis for removal and awarding Plaintiff fees and costs is just. See Martin, 546 U.S. at 138. At best, the record reveals that Kocontes was "carelessly unaware" of the law of domicile and remand, which is inexcusable considering he is a licensed (and allegedly very competent) attorney. See Gonzalez v. J.C. Penney Corp., 209 F. App'x 867, 870 (11th Cir. 2006). Also significant is that at the time the instant case was filed, Kocontes was aware of Judge Baird's December 2007 determination that Kocontes was domiciled in Florida. Kocontes has pointed to no evidence that would suggest a change in his domicile between Judge Baird's order and the filing of the instant case. At worst, the record suggests that Kocontes removed the action to prolong the litigation and impose costs against Plaintiff. Under either scenario, Kocontes lacked an objectively reasonable basis for removal. See id.

Further, in light of the presumption that all uncertainties as to removal jurisdiction are to be resolved in favor of remand, "it can be stated with relative ease that the Notice [of Removal] was patently improper considering the facts presented in the case." Tran v. Waste Mgmt., Inc., 290 F. Supp. 2d 1286, 1295-96 (M.D. Fla. 2003) (footnote omitted).

Thus, Kocontes should reimburse Plaintiff's reasonable attorneys' fees and costs incurred in defeating the unwarranted removal.

**V.     Conclusion**

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     Plaintiff's Motion for Remand be **GRANTED**;

(2) Plaintiff's request for attorneys' fees and costs be **GRANTED** against Defendant;[9]

(3) jurisdiction be retained only to award reasonable attorneys' fees and costs and the case be otherwise **REMANDED**; and

(4) the Clerk be directed to mail a certified copy of this order, pursuant to 28 U.S.C. § 1447(c), to the Clerk of the Circuit Court for Pinellas County, Florida, terminate any pending motion, and close this case.

**Date: July 3, 2008**

_/s/ Elizabeth A. Jenkins_
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
District Judge
Counsel of Record

---

[9] Unless the parties jointly stipulate to an amount, Plaintiff should be directed to submit an affidavit of his attorney's fees and costs, which should include the time expended the hourly rate involved, a specific statement of the claimed reasonable fee, and a particularized statement of costs, after which submission Defendant may respond in the time provided by Local Rule 3.01(b), M.D. Fla.